UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLINTON PAVELKO, *et al.*,        )
                                   )
                                   )
           Plaintiffs,             )
                                   )
      v.                           ) Civil Case No. 16-1765 (RJL/DAR)
                                   )
DISTRICT OF COLUMBIA,              )
                                   )
                                   )
           Defendant.              )

**MEMORANDUM OPINION**
(February 13, 2018) [Dkt. # 15, 17]

FILED
FEB 1 3 2018
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiffs Clinton Pavelko and Jean Holman ("plaintiffs"), on behalf of their minor child H.P., have filed this suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiffs seek judicial review of certain conclusions contained within a final administrative decision of the D.C. Office of the State Superintendent of Education. *See generally* Compl. [Dkt. # 1]. Specifically, plaintiffs allege that the final administrative decision by the Independent Hearing Officer ("IHO") failed to recognize numerous IDEA violations that the District of Columbia ("defendant" or "the District") committed in the course of evaluating and recommending the appropriate special educational services and placement for H.P.

On September 13, 2016, the case was referred to Magistrate Judge Deborah A. Robinson for full case management. *See* 9/13/2016 Minute Entry. Before Magistrate Judge Robinson, the parties filed cross-motions for summary judgment. *See* Pls.' Mot.

Summ. J. [Dkt. # 15]; D.C.'s Opp'n to Pls.' Mot. Summ. J. & Cross-Mot. Summ. J. [Dkt. # 17]. Currently pending before this Court is Magistrate Judge Robinson's December 18, 2017 Report and Recommendation ("R&R") for the above-captioned case. *See generally* R&R [Dkt. # 23]. In that R&R, Magistrate Judge Robinson recommends that the Court deny plaintiffs' motion for summary judgment and grant defendant's motion for summary judgment.

Pursuant to Local Civil Rule 72.3(b), the parties were allowed 14 days to file objections to the recommendations made by Magistrate Judge Robinson. Not surprisingly, plaintiffs objected to Magistrate Judge Robinson's R&R. *See* Pls.' Objection to R&R ("Pls.' Obj.") [Dkt. # 24]. When a party objects to a magistrate judge's recommended disposition, the Court reviews *de novo* those portions of the recommendation to which an objection is made. Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c). The Court may "accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge." LCvR 72.3(c). Upon consideration of Magistrate Judge Robinson's R&R, the parties' briefing, and the applicable case law and legal standards, the Court hereby ADOPTS Magistrate Judge Robinson's recommendations, DENIES plaintiffs' motion for summary judgment, and GRANTS defendant's motion for summary judgment for the reasons contained with the R&R and elaborated upon below.

## BACKGROUND

The factual background of this case is ably summarized by Magistrate Judge Robinson in her report, *see* R&R at 3-5, and I need not re-tread that ground here. Suffice

it to say that, from summer 2014 through early spring of 2015, plaintiffs' child, H.P., was repeatedly evaluated by D.C. Public Schools ("DCPS") and non-DCPS providers to determine H.P.'s eligibility for special education and related services. *See* A.R. at 8-11 [Dkt. # 11-1]. Ultimately, the evaluating specialists diagnosed H.P. as having Attention Deficit/Hyperactivity Disorder ("ADHD") and as meeting the criteria for an Autism Spectrum Disorder ("ASD") disability. *See id.* One evaluator concluded that H.P. would benefit from "placement in a therapeutic school with a low student-to-teacher ratio" and from receipt of "ABA services to help foster his social, emotional and communication skills." *Id.* at 9. Another recommended that H.P. repeat preschool in a "program designed for children with an ASD diagnosis, to include a language enriched program" that was "highly structured" and would provide H.P. education in both "small group and individualized" settings. *Id.* at 9-10.

Based on that information, a DCPS special education eligibility team determined that H.P. qualified for special education under the IDEA—a finding to which plaintiff Holman consented. *Id.* at 10. On April 21, 2015, DCPS convened an Individualized Education Program ("IEP") meeting in order to formulate and propose an IEP for H.P. *Id.* Unbeknownst to those DCPS officials, however, plaintiffs had enrolled H.P. at the Auburn School—a private special education day school—the day before. *Id.* At the IEP meeting, DCPS proposed an IEP for H.P. that contained various goals and specifications for specialized support and instruction, including: twenty hours per week of specialized instruction outside general education, which would occur in the Community and Education Support ("CES") classroom; four hours per week of specialized instruction in

general education, during which H.P. would be accompanied by a paraprofessional; and two hours per month, each, of Speech-Language Pathology, Occupational Therapy, and Behavioral Support Services outside of general education. *Id.* at 10-11. The DCPS team proposed a CES classroom at Takoma Education Campus ("Takoma") as the location of the services. *Id.* at 11.

About one week after the April 21, 2015 IEP and placement proposal, plaintiff Holman and H.P.'s grandmother visited the proposed CES classroom at Takoma. *Id.* After observing the classroom, they were not satisfied that the placement was appropriate for H.P. *See id.* (recounting plaintiffs' concerns that the CES program was "too easy" for H.P. and that other students in the program were nonverbal). Although DCPS responded to the concerns raised by plaintiffs and H.P.'s grandmother, "no agreement was reached" for H.P. to enroll at Takoma. *Id.* at 12. Instead, plaintiffs chose to keep H.P. enrolled at the Auburn School, where he had been progressing well. *Id.* at 11-12.

Ultimately, after additional evaluations of H.P., a second visit to the CES classroom at Takoma, and more back-and-forth between DCPS and plaintiffs, an updated IEP was formulated for H.P. in late January 2016. *See id.* at 12-14. Plaintiffs, however, continued to object to DCPS's revised proposal for H.P. *Id.* at 15. They filed a due process complaint against DCPS in the D.C. Office of the State Superintendent of Education arguing, among other things, that H.P. had been denied his right to a free and appropriate public education ("FAPE") under the IDEA and that the April 2015 and January 2016 proposed IEPs were unsatisfactory. *Id.* at 4, 6-7. In his 32-page determination, the IHO assigned to H.P.'s case agreed with plaintiffs that various

4

shortcomings in the January 2016 IEP process violated the IDEA. *See id.* at 29-32. To remedy those violations, the IHO ordered DCPS to reimburse plaintiffs for the costs associated with H.P.'s attendance at the Auburn School from January 29, 2016 through the end of the 2015-2016 school year. *Id.* at 34. The IHO rejected plaintiffs' claims regarding the April 2015 IEP, however, as well as their claim that H.P. had been denied a FAPE from April 2015 through late-January 2016. *Id.* at 16-29. Those latter conclusions were upheld by Magistrate Judge Robinson in her R&R, to which plaintiffs now object.

## ANALYSIS

In their suit, plaintiffs seek judicial review of the IHO's administrative decision. In such a case, as Magistrate Judge Robinson noted, plaintiffs have the burden of proving that the "hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). Although the IDEA requires reviewing courts to afford "less deference than is conventional in administrative proceedings," *id.* (internal quotation mark omitted), courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they review," *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). With that admonition in mind, "[c]ourts sitting on an IDEA appeal" must "give due weight to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 108-09 (D.D.C. 2010) (internal quotation marks omitted).

Here, plaintiffs take issue with three primary conclusions of the R&R. Mindful of the standard of review cited above, I address—and reject—each of plaintiffs' contentions.

First, plaintiffs argue that Magistrate Judge Robinson erred in affirming the IHO's determination that H.P.'s parents were granted meaningful participation in the April 2015 educational placement decision. *See* Pls.' Obj. 5-6. I disagree. Plaintiffs are certainly correct that various procedural safeguards of the IDEA require school officials to notify and work with parents when crafting or modifying an educational placement. *See, e.g., Honig v. Doe*, 484 U.S. 305, 311-12 (1988); *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 123 n.6 (D.D.C. 2013). They are incorrect, however, that the IHO erred in determining that DCPS met those procedural requirements. The evidence before the IHO was that plaintiffs and H.P.'s grandmother: 1) received a DCPS-funded, independent evaluation of H.P. upon objecting to the original DCPS evaluation; 2) were present at and participated in the April 21, 2015 IEP meeting; 3) were granted access to H.P.'s prospective classroom and teachers at Takoma; and 4) received responses from DCPS about their concerns with the proposed IEP and CES classroom. *See* A.R. at 8-12, 19-20; *see also* R&R 11. Given all that, plaintiffs have not met their burden to show that the IHO was wrong to conclude that plaintiffs were "afforded meaningful participation in the development of the April 21, 2015 IEP and educational placement." A.R. at 19. In short, plaintiffs' disagreement with the *output* of the IEP process does not mean that they were denied the chance to provide meaningful *input* into that process. *Cf. Hawkins v. District of Columbia*, 692 F. Supp. 2d 81, 84 (D.D.C. 2010) (parents' right to participate in "the formation of their child's IEP does not constitute a veto power over the IEP team's decisions (internal quotation marks omitted)).

Next, plaintiffs object to the R&R's approval of the IHO's determination that the April 21, 2015 IEP met the substantive requirements of the IDEA. *See* Pls.' Obj. 11-14. As Magistrate Judge Robinson correctly explains, the IEP is the "centerpiece of the statute's education delivery system for disabled children"—and thus of the District's obligation to provide a free appropriate public education for qualifying disabled children. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (internal quotation marks omitted). By statute, the IEP must include an assessment of the student's current levels of academic and functional performance; a description of how the child's disability affects the child's involvement and progress in the educational curriculum; measurable annual goals for the child's academic and functional progress; and an outline of the specially designed instruction and support services necessary to allow the child to achieve the annual goals. *See, e.g., id.* (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(IV)). While the IDEA requires an individualized assessment of each child's "unique needs," it also mandates "that children with disabilities receive education in the regular classroom 'whenever possible.'" *Id.* at 994, 999 (quoting *Rowley*, 458 U.S. at 181, 202). Taken together, to satisfy the IDEA the components of an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999. The central question, in other words, "is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.*

Contrary to plaintiffs' arguments, the IHO properly concluded that the April 21, 2015 IEP satisfied the IDEA's standards. The IHO examined the testimony and evidence regarding the appropriateness of each type of service required under the IEP. *See* A.R. at

7

21-22 (discussing requirement of occupational therapy services); *id.* at 22 (discussing requirement of speech-language pathology services); *id.* at 23 (discussing requirement of behavioral support services). As to each service, the IHO chose to credit the testimony of DCPS's experts or the recommendations of the independent evaluators, all of which indicated that the amount and nature of the services contained in the IEP were "appropriate" or "needed" to meet H.P.'s academic and functional goals. *Id.* at 21, 23. Plaintiffs have given this Court no reason to second-guess that decision of the IHO or, for that matter, the relevant school officials and examiners. *Cf. Rowley*, 458 U.S. at 206.

The IHO also reasonably rejected plaintiffs' request for more integration of H.P.'s support services into the classroom program. The IHO pointed out that H.P.'s receipt of such integrated services at the Auburn School, without more, did not demonstrate that the IEP's provision of the services on a "'pull-out' basis" was inappropriate under the relevant standards. *See* A.R. at 23 (citing 34 C.F.R. § 300.34(a)). Similarly, the IHO was correct to reject the argument that the IEP wrongly failed to provide for a dedicated aide or for the use of Applied Behavioral Analysis methodologies. As the IHO noted, *see id.* at 24-25, at the time of the April 2015 IEP, it had not yet been established that H.P. needed those services; thus, the IEP's failure to include them does not render the IEP inadequate. *See S.S. ex rel. Shank v. Howard Road Acad.*, 585 F. Supp. 2d 56, 66 (D.D.C. 2008) (the IDEA does not countenance "'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement" (internal quotation marks omitted)). Finally, in evaluating the remainder of plaintiffs' objections to the IEP, the IHO weighed the testimony of the classroom teachers against that of plaintiff Holman

and H.P.'s grandmother, concluding that the teachers had superior insight into the functioning of the students in their classrooms and the need for certain sensory integration equipment. A.R. at 23-24. That interpretation of the evidence was more than reasonable. In summary, plaintiffs have failed to meet their burden to show that the IHO was wrong to conclude that the April 2015 IEP was "reasonably calculated to enable" H.P. "to make progress appropriate in light of [his] circumstances." *Endrew F.*, 137 S. Ct. at 1001.

For many of the same reasons, I reject plaintiffs' third objection to the R&R—namely, that the R&R incorrectly affirmed the IHO's determination that H.P. was offered a FAPE from April 21, 2015 through January 29, 2016.[1] Beginning with the April 2015 IEP and running through the January 29, 2016 date on which H.P.'s updated IEP was finalized, plaintiffs had a valid and appropriate offer of placement in the CES program at Takoma. *See* A.R. at 27-28. That offer was confirmed when plaintiffs wrote DCPS to request a meeting regarding the creation of a new IEP and placement for H.P. and, in response, were informed that H.P. remained welcome to enroll in Takoma "at any time" pursuant to the April 2015 IEP. *Id.* at 551 [Dkt. # 11-10]. To be sure, plaintiffs and H.P.'s grandmother continued to object to that option. As the IHO noted, however, the fact that plaintiffs "just did not agree with the proposal" does not change the fact that the District was offering H.P. a FAPE at Takoma during the latter half of 2015. *Id.* at 28.

---

[1] The IHO determined that DCPS failed to offer a FAPE beginning on January 29, 2016—the date it finalized H.P.'s updated IEP. As a result, the IHO awarded plaintiffs reimbursement for tuition at the Auburn School beginning on that date. With that in mind, the Court understands plaintiffs to be arguing that H.P. was denied a FAPE from the date of the April 2015 IEP through the finalization of the January 29, 2016 IEP. *See* Def.'s Opp'n to Pls.' Obj. 15 n.1 [Dkt. # 26].

Contrary to plaintiffs' arguments, moreover, the January 2016 update of H.P.'s IEP does not impugn the appropriateness of the April 2015 IEP: As discussed previously, it is well-established that "the adequacy of an IEP can be measured only at the time it is formulated, not in hindsight." *District of Columbia v. Walker*, 109 F. Supp. 3d 58, 66 (D.D.C. 2015). I therefore agree with the R&R that the IHO correctly determined that DCPS offered H.P. a FAPE from April 21, 2015 through January 29, 2016.

## CONCLUSION

For the foregoing reasons, in addition to those given by Magistrate Judge Robinson in her R&R, plaintiffs' claims fail as a matter of law. Accordingly, upon consideration of the entire record and *de novo* review of the objected-to portions of the R&R, the Court hereby ADOPTS Magistrate Judge Robinson's recommendations, DENIES plaintiffs' motion for summary judgment, and GRANTS defendant's motion for summary judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge